**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| GRETA ANDERSON, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>EVENFLO COMPANY, INC.,<br><br>     Defendant. | CASE NO.:<br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br><br>**JURY TRIAL DEMANDED** |

COMES NOW THE PLAINTIFF, GRETA ANDERSON ("Anderson" or "Plaintiff"), individually and on behalf of the other members of the below-defined Class she seeks to represent (collectively, the "Class" or "Class members"), hereby alleges against EVENFLO COMPANY, INC. ("Evenflo" or "Defendant"), upon personal knowledge, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.    <u>NATURE OF THE CASE</u>

1.    Plaintiff brings this class action lawsuit seeking damages and equitable relief on her own behalf and on behalf of members of the Class, each of whom purchased one or more booster seats manufactured and/or marketed by Evenflo.

2.    Evenflo manufactures and/or markets several types of infant and child products and gear. Relevant to the instant case, Evenflo manufactures and/or markets "Big Kid" Booster Seats, which Evenflo advertises as safe, "side impact tested," the "BEST BET BOOSTER," and safe for

children weighing 30 pounds or more.[1] Evenflo's "Big Kid" Booster Seats are widely available and sold at brick-and-mortar and online retailers such as Amazon.com, WalMart, Target, and Buy Buy Baby.

3.      On February 6, 2020, ProPublica, a "nonprofit newsroom that investigates abuses of power," released a report detailing how Evenflo ignored the advice of company engineers who indicated that the "Big Kid" Booster Seat was not safe for children under 40 lbs, and "touted its Big Kid boosters as 'SIDE IMPACT TESTED' without revealing that its own tests showed a child seated in its booster could be in grave danger in such a crash. *See Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, ProPublica, https://www.propublica.org/article/ evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (last visited Feb. 7, 2020) (hereinafter "*Profits Over Safety*").

4.      Upon information and belief, despite Evenflo's advertising directing that its "Big Kid" Booster Seat are safe for children thirty pounds or greater, Evenflo's "Big Kid" Booster Seats are not safe or appropriate for children weighing less than forty pounds. *See Profits Over Safety*.

5.      Upon information and belief, Evenflo advertised on its "Big Kid" Booster Seats that the product was "SIDE IMPACT TESTED," and claimed on its website that the side impact tests performed on Evenflo's "Big Kid" Booster seats were "rigorous." *See id*. Upon information and belief, Evenflo's side impact testing was "anything but stringent" and indicated that "if real children moved [the way they did in the side impact tests], they could suffer catastrophic head, neck and spinal injuries — or die." *See id.*

---

[1] *Evenflo AMP High Back Car Seat Booster, Blue Angles*, Amazon.com, https://www.amazon. com/Evenflo-Big-Booster-Seat-Sprocket/dp/B006PB2CA4/ref=sr_1_4?keywords=evenflo%2B booster%2Bseat&qid=1581093506&sr=8-4&th=1 (last visited Feb. 18. 2019).

6.      Upon information and belief, Evenflo's advertising regarding the side impact tests performed on its "Big Kid" Booster Seats mislead its customers into purchasing a product they thought would be safe in a side impact scenario. Instead, a child sitting in Evenflo's "Big Kid" Booster Seat could be seriously injured or killed if the car they were traveling in was impacted on the side while they were sitting in an Evenflo "Big Kid" Booster Seat.

7.      Upon information and belief, Evenflo markets its products to the health- and safety-conscious consumer. Evenflo's consumers are parents who care about the health and safety of their children. As a result, the Evenflo consumer pays a premium for Evenflo's "Big Kid" Booster Seats which the consumer believes is safer or superior to other booster seat products.

8.      Because of Evenflo's false and/or misleading claims, Plaintiff and members of the Class paid more for their Evenflo "Big Kid" Booster Seats than they would have paid, or chose to purchase an Evenflo "Big Kid" Booster Seat in the first place, in absence of the false and/or misleading claims.

## II.      JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and the Class are citizens of a state other than that of the Defendant.

10.      This Court has personal jurisdiction over Defendant because Defendant's Products are advertised, marketed, distributed, and sold throughout the State of Minnesota; the injuries resulting from Defendant's unlawful conduct occurred within the State of Minnesota; Defendant is authorized to do business within the State of Minnesota; and Defendant has sufficient minimum contacts with Minnesota and/or otherwise has intentionally availed itself of the markets of

Minnesota, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

### III.    PARTIES

#### A.    *Plaintiff*

Plaintiff Greta Anderson is a resident of Dakota County, Minnesota. Plaintiff purchased one or more Evenflo "Big Kid" Booster Seats within the past six years.

#### B.    *Defendant*

12.     Defendant, Evenflo Company, Inc., designs and manufactures a range of children's products, including the "Big Kid" Booster Seat.

13.     Defendant is a Delaware Company registered to conduct business in the state of Minnesota. Defendant can be served via its Registered Agent, CT Corporation System, Inc. at 1010 Dale Street North, Saint Paul, MN 55117.

### IV.    FACTUAL ALLEGATIONS

#### A.    *Evenflo's "Big Kid" Booster Seat*

14.     "For nearly 100 years" Evenflo has designed and manufactured children's products. *About Evenflo*, Evenflo, https://www.evenflo.com/about/about-us.html (last visited Feb. 14, 2020). Evenflo first started out manufacturing baby feeding products; now Evenflo manufactures and designs "a complete line of child seats," as well as strollers, highchairs, safety gates, playards and "ExerSaucers." *Id.*

15.     Evenflo touts its products—and the company—as being focused on excellence and safety. *See id.* Evenflo specifically boasts:

4

Our team has always been committed to a quest for excellence. To the Evenflo family nothing is more important than the safety, wellbeing, and development of children. We work persistently to innovate and deliver to you best-in-class infant care and juvenile products . . . We hope that the products we create and deliver to you provide value to your family, helping to make an every [sic] changing day — and life — a little easier.

*Id.*

16.     One such product designed and manufactured by Evenflo includes its "Big Kid" Booster Seats, which have been described as a "top-selling" booster seat in the United States. *See Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, ProPublica (Feb. 6, 2020), https://www.propublica.org/ article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety. Intended as a transitional step after a car seat, the "Big Kid" Booster Seat was designed to vertically elevate small children so a standard car seat belt sits across their chest; Evenflo's "Big Kid" Booster Seat does not have a harness of its own. *See id.*



*Id.*

17.     Evenflo boasts its thorough safety testing for its "Big Kid" Booster Seats, stating:

At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.

- Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards.

- Designed and tested for structural integrity at energy levels approximately 2X the federal crash test standard.

*See Big Kid Booster Car Seat*, Evenflo, https://www.evenflo.com/car-seats/big-kid/us_bigkid.html?dwvar_us__bigkid_fashion=31912230&cgid=car-seat-booster#start=8 (last visited Feb. 14, 2020).

18.    Upon information and belief, Evenflo advertises its "Big Kid" Booster Seats as safe to use for children weighing as little as thirty pounds. *See Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, ProPublica (Feb. 6, 2020), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.



### Child Specs (30-110lbs)

SEAT BELT BOOSTER
Weight: 30 lbs-110 lbs (13.6-49.8 kg)
Height: 40-57 in. (102-145 cm)
Age: at least 4 years of age
Fit: Top of child's ears are at or below the top of the child restraint.

NO BACK BOOSTER
Weight: 40-110 lbs. (18-49.8 kg)
Height: 40-57 in. (102-145 cm)
Age: at least 4 years of age
Fit: Top of child's ears are at or below the top of the vehicle seat headrest.

### Product & Shipping Specs

Dimensions Unfolded: 15" L x 16" W x 28" H

Package Width: 16.5
Package Weight: 8.07
Package Depth: 11.25
Package Height: 19.25

*Evenflo AMP High Back Car Seat Booster, Blue Angles, Amazon.com, https://www.amazon.com/Evenflo-Big-Booster-Seat-Sprocket/dp/B006PB2CA4/ref=sr_1_4?keywords=evenflo%2Bbooster%2Bseat&qid=1581093506&sr=8-4&th=1 (last visited Feb. 18. 2019).*

6

19.    Upon information and belief, the average consumer would understand Evenflo's specifications and advertising to mean that its "Big Kid" Booster Seats are safe to use for children weighing thirty to forty pounds.

20.    Upon information and belief, Evenflo advertises on labels or tags on its "Big Kid" Booster Seats the products themselves are "side impact tested."



*Evenflo    Big    Kid    AMP    Booster    Car    Seat,    Sprocket*,    Amazon.com
https://www.amazon.com/Evenflo-Big-Booster-Seat-Sprocket/dp/B00AJSIVWW    (last    visited
Feb. 7, 2020).

21.    Upon information and belief, the average consumer would understand Evenflo's "side impact tested" advertising to mean that its car seats would protect children in the event a child using the "Big Kid" Booster Seat was involved in a side impact crash.

**B.    *ProPublica's Investigation and February 7, 2020 Report.***

22.    On February 6, 2020, ProPublica, a "nonprofit newsroom," released a report detailing multiple safety and deceptive advertising problems regarding Evenflo's "Big Kid"

Booster Seats. *See Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, ProPublica (Feb. 6, 2020), https://www.propublica.org/ article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.

23.     In the Report, ProPublica described how Eric Dahle, a safety engineer for Evenflo, recommended Evenflo stop marketing and selling booster seats to children weighing under forty pounds. *See id.* Dahle specifically "e-mailed high-ranking [Evenflo] executives to tell them that children lighter than 40 pounds would be safer in car seats that use harnesses to hold their small bodies in place," however, "[a] marketing executive 'vetoed' Dahle's safety recommendation" and Evenflo continued marketing its "Big Kid" Booster Seats to children weighing 30 to 110 pounds. *Id.*

24.     Upon information and belief, marketing "Big Kid" Booster Seats to children in the 30 to 40-pound range allows Evenflo to expand its market for its "Big Kid" Booster Seats, leading to increased profits.

25.     ProPublica also detailed how Evenflo advertised its "Big Kid" Booster Seats as "SIDE IMPACT TESTED," when, in reality, Evenflo's tests "were anything but stringent," and "showed a child seated in its booster could be in grave danger in such a crash." *Id.*

26.     Specifically, Evenflo's side impact tests showed that "when child-sized crash dummies seated in Big Kid boosters were subjected to the forces of a T-bone collision, they were thrown far out of their shoulder belts," which could cause the children to suffer "catastrophic head, neck, and spinal injuries," as well as death. *Id.*

27.     Upon information and belief, Evenflo's advertising of its "Big Kid" Booster Seats as "SIDE IMPACT TESTED" led the average Evenflo consumer to believe Evenflo's "Big Kid"

Booster Seats were safer than a booster seats not marketed as "SIDE IMPACT TESTED," and thus allowed Evenflo to charge a premium price for its "Big Kid" Booster Seats.

28.     Evenflo continues to stand by its "Big Kid" Booster Seat and its advertising, stating that Evenflo "has been a pioneer in side-impact testing of boosters and other child car seats, and that [Evenflo] provides safe, effective and affordable products, including the Big Kid . . . [which] has always complied with federal regulations . . . ." *Id.* Currently no federal regulations exist for testing booster seats in side-impact crashes. *See House Subcommittee Opens Investigation of Evenflo, Maker of 'Big Kid' Booster Seats,"* ProPublica (Feb. 12, 2020), https://www.propublica.org/article/house-subcommittee-opens-investigation-of-evenflo-maker-of-big-kid-booster-seats.

29.     After ProPublica released its report on Evenflo's "Big Kid" Booster Seats, a subcommittee for the United States House of Representatives launched an investigation into Evenflo over Evenflo's marketing and testing practices. *See id.*

**C.     Injuries Caused by Defendant's "Big Kid" Booster Seat.**

30.     Tragically, children sitting in Evenflo's "Big Kid" Booster Seats have been seriously injured in car crashes; and specifically, side-impact crashes.

31.     As detailed in ProPublica's Report, Jillian Brown was one of those children. While Jillian's mother, Lindsey, was driving Jillian and Jillian's sister, Samantha, to daycare, the car Jillian was driving was hit on the driver's side of the car. At the time of the crash Jillian was seated in an Evenflo "Big Kid" Booster Seat.

32.     Even though Jillian was seated on the back passenger side of the car—the furthest away of all three occupants from the impact—Jillian's shoulder slipped out of the seat belt and "her chest and stomach jackknifed over the lap portion of her seat belt . . . ." *Id.* As a result of the

impact Jillian suffered an "internal decapitation" and is now paralyzed from the neck down. *Id.*
Jillian's sister recovered from her injuries, despite being seated closer to the point of impact. *Id.*

33.    Jillian Brown's father specifically purchased the Evenflo "Big Kid" Booster Seat
Jillian was using on the day of the crash because of the number of times Evenflo boasted about
"safety" on the booster seat box. *Id.*

### D.    Plaintiff's "Big Kid" Booster Seat Purchase

34.    Within the past six years Plaintiff Greta Anderson purchased one or more Evenflo
"Big Kid" Booster Seats from retail stores located in Minnesota. Plaintiff purchased her Evenflo
"Big Kid" Booster Seat for use by her children, some or all who have used the "Big Kid" Booster
Seats purchased by Plaintiff during times when the children weighed less than thirty pounds.

35.    Plaintiff paid a premium price for her Evenflo "Big Kid" Booster Seats at the time
she purchased them. Had Plaintiff known that any of Evenflo's claims regarding its "Big Kid"
Booster Seats were false, Plaintiff would not have purchased the Booster Seats, or would have paid
substantially less for the products.

## V.    CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the
Federal Rules of Civil Procedure on behalf of herself and all others similarly situated on behalf of
the following Class:

> All purchasers of Evenflo "Big Kid" Booster Seats advertised as "side impact
> tested" or for use by kids weighing as little as thirty (30) pounds, purchased within
> the State of Minnesota within the last six (6) years.

37.    This action has been brought, and may be properly maintained, under Federal Rule
of Civil Procedure Rule 23.  The proposed Class and Class Representative satisfy the criteria of
Rule 23 as outlined below.

38.     **Numerosity—Federal Rules of Civil Procedure 23(a)(1).**  Information regarding exact numbers of sales of Evenflo's "Big Kid" Booster Seats is not publicly available. However, Evenflo's products are sold nationwide in online and brick and mortar stores such as Amazon.com, WalMart, Target, and Buy Buy Baby. Further, sources, such as ProPublic's article, indicate that Evenflo has sold more than 18 million "Big Kid" Booster Seats. *See "Profits over Safety"*. Based on information and belief, all of Evenflo's "Big Kid" Booster Seats have been advertised as "SIDE IMPACT TESTED" and safe for use for children weighing as little as thirty pounds. Based on the availability of Evenflo's "Big Kid" Booster Seats, coupled with the high demand for booster seats, it is reasonable to calculate that Class members are so numerous and dispersed that joinder of all Class members is impossible. Discovery into Defendant's sales records will aid in verifying Numerosity of the Class members.  Class members may be notified of this action by Court-approved notice dissemination methods.

39.     **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact which predominate over any questions which may affect individual Class members, including, but not limited to:

a.     whether Evenflo engaged in the conduct alleged herein;

b.     whether Evenflo designed, manufactured, advertised, marketed, and distributed for sale the "Big Kid" Booster Seats at issue into the stream of commerce;

c.     whether Plaintiff and Class members relied on Evenflo's "SIDE IMPACT TESTED" advertising claims when making the decision to purchase Evenflo's "Big Kid" Booster Seats;

d.     whether Plaintiff and Class members relied on Evenflo's representation that the "Big Kid" Booster Seats were safe for children weighing thirty pounds or more;

e.     whether Evenflo's alleged conduct violates state consumer protection laws, as set forth herein;

11

     f.      whether Evenflo is liable for negligent misrepresentation based on the conduct alleged herein;

     g.      whether Evenflo was unjustly enriched as a result of the alleged conduct as set forth herein;

     h.      whether Evenflo's alleged conduct violates its express warranty, as set forth herein;

     i.      whether Evenflo's alleged conduct was willful, or whether Evenflo willfully mislead consumers;

     j.      whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

     k.      the amount and nature of relief to be awarded to Plaintiff and Class members.

40.    **Typicality—Federal Rules of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of Class members because Plaintiff and the Class members purchased Evenflo's "Big Kid" Booster Seats advertised as "SIDE IMPACT TESTED" and safe for children weighing thirty pounds or more. Had Plaintiff or Class members known the truth of the product they purchased, they either would not have purchased Evenflo's "Big Kid" Booster Seat or would have paid less for the "Big Kid" Booster Seat they did purchase. As a result of Evenflo's misleading and/or fraudulent conduct, Plaintiff and Class members have suffered monetary damages. Plaintiff's claims are typical of the Class members' claims because Plaintiff's claims arise from the same wrongful conduct that give rise to Class members' claims.

41.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** The above-named Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class it seeks to represent. Plaintiff has retained counsel that are well-versed and experienced in complex litigation and class action litigation, and Plaintiff and

counsel intend to vigorously prosecute this action on behalf of Plaintiff and the Class. The interests of the Class will be fairly and adequately protected by Plaintiff and counsel.

42.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Injunctive and declaratory relief are appropriate because Evenflo has acted or refused to act on grounds which are generally applicable to Plaintiff and Class members. Thus, final injunctive and declaratory relief, as described below, is appropriate with respect to the Class.

43.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this action; no unusual difficulties are likely to be encountered in the management and litigation of this class action. When compared to the burden and expense required to litigate each Class member's claims, each individual Class member's claims are relatively small; thus, it would be impracticable for individual Class members to seek redress for Evenflo's wrongful conduct. Even if individual Class members could afford individual suits, the court system could not. Furthermore, individualized litigation creates the potential for embarrassment and inconsistent judgments and increases the delay and expense to all parties and the court system. Adjudication of this matter by means of a class action ensures the most efficient and time- and cost-effective resolution by providing economy of scale, presents fewer management difficulties, and provides the benefit of a comprehensive supervision and a final adjudication by a single court.

44.    **Class Action Maintainable under Rule 23(b)(3).** A class action is appropriate because common questions of law and fact predominate over any individual questions affecting only individual members. Class treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Without a class action, the Defendant will remain free from responsibility for misleading Plaintiff and Class members regarding the nature of its "Big Kid" Booster Seat.

45.    **Class Action Maintainable Under Rule 23(b)(2).**    By placing into the marketplace its "Big Kid" Booster Seat containing misleading labelling and advertising, and by continuing to manufacture, market, and sell its "Big Kid" Booster Seat as "SIDE IMPACT TESTED" and safe for children weighing thirty pounds or more, the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making declaratory relief an appropriate remedy for Plaintiff and the Class.

## VI.    CLASS CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF MINN. STAT. § 325D.44
### UNFAIR & DECEPTIVE TRADE PRACTICES

46.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

47.    Defendant made representations to Plaintiff and the Class by advertising that Defendant's "Big Kid" Booster Seat was safe for use for children weighing as little as 30 pounds.

48.    Defendant made representations to Plaintiff and the Class in advertising that Defendant's "Big Kid" Booster Seat was "SIDE IMPACT TESTED," indicating Defendant's "Big Kid" Booster Seat was safe in a side impact car crash, or safer than competitors who did not "side impact test" their products.

14

49.     Defendant's representations that (1) its "Big Kid" Booster Seats were safe to use for children weighing as little as 30 pounds; and (2) its "Big Kid" Booster Seats were side impact tested, and thus safe in the event of a side impact, were false.

50.     At the time Defendant represented that Defendant's "Big Kid" Booster Seat was safe for use for children weighing as little as 30 pounds, Defendant knew or had reason to know that its "Big Kid" Booster Seat was not safe for children weighing less than 40 pounds to use.

51.     At the time Defendant represented that its "Big Kid" Booster Seat was "SIDE IMPACT TESTED," indicating Defendant's "Big Kid" Booster Seat was safe in a side impact car crash, or safer than competitors who did not "side impact test" their products, Defendant knew or had reason to know that its "Big Kid" Booster Seats were not safe for use in side impact crashes.

52.     Defendant has violated Minn. Stat. § 325D.44(2) by causing "confusion or misunderstanding as to the source, sponsorship, approval, or certification" of its "Big Kid" Booster Seats.

53.     Defendant has violated Minn. Stat. § 325D.44(3) by causing "confusion or misunderstanding as to affiliation, connection, or association with, or certification" of its "Big Kid" Booster Seats.

54.     Defendant has violated Minn. Stat. § 325D.44(5) by representing that Defendant's "Big Kid" Booster Seat had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it does not have.

55.     Defendant has violated Minn. Stat. § 325D.44(7) by representing that Defendant's "Big Kid" Booster Seats are of a "particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

56.     Defendant has violated Minn. Stat. § 325D.44(9) by advertising its "Big Kid" Booster Seats as safe for children weighing as little as 30 pounds, and as "SIDE IMPACT TESTED" and safe for side impact car collisions, when it intended that the product sold would not be as advertised.

57.     Defendant has violated Minn. Stat. § 325D.44(13) by creating a likelihood of confusion about its "Big Kid" Booster Seats by advertising them as being safe for children weighing as little as 30 pounds, and as "SIDE IMPACT TESTED" and safe for side impact car collisions, when Defendant's "Big Kid" Booster Seats are not safe for children weighing less than 40 pounds, and are not safe in side impact car collisions.

58.     The Minnesota statutes prohibiting deceptive trade practices apply because Defendant's scheme of representing to and entering into a contract with Plaintiff and the Classes that Defendant's "Big Kid" Booster Seats were safe for children weighing as little as 30 pounds and as "SIDE IMPACT TESTED" and safe for side impact car collision, was carried out in Minnesota.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Classes have suffered damages in an amount to be determined at trial.

**COUNT II**
**VIOLATION OF MINN. STAT. § 325F.69**
**MINNESOTA CONSUMER PROTECTION ACT**

60.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

61.     Minnesota Statutes § 325F.69, Minnesota's Consumer Protection Act ("CPA") provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise,

whether or not any person has inf act been misled, deceived, or damaged thereby, is enjoinable . . . .

62.    "Person" is defined within the CPA as:

Any natural person or a legal representative, partnership, corporation (domestic and foreign), company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof.

Minn. Stat. § 325F.68, subd. 3. Defendant Evenflo is a "person" for the purposes of the CPA.

63.    "Merchandise" is defined within the Consumer Protection Act as "any objects, ware, goods, commodities, intangibles, real estate, loans, or services." Minn. Stat. § 325F.68, subd. 2. Evenflo's "Big Kid" Booster Seats are "merchandise" for the purposes of the CPA.

64.    Defendant knew, or reasonably should have known, or was reckless in not knowing, that representing its "Big Kid" Booster Seats as "SIDE IMPACT TESTED" would lead a reasonable consumer to believe that their child would be safe in a side impact scenario when using Defendant's "Big Kid" Booster Seat.

65.    Defendant intended for its consumers to rely on Defendant's representations that its "Big Kid" Booster Seats were "SIDE IMPACT TESTED," and thus safe in side impact scenario.

66.    While Defendant's "Big Kid" Booster Seats were "SIDE IMPACT TESTED," the results of the side impact tests performed by Defendant indicated that children using Defendant's "Big Kid" Booster Seats would be severely injured or killed in the event of a side impact scenario.

67.    Defendant's representations regarding its "Big Kid" Booster Seats being safe in side impact scenarios because they were "SIDE IMPACT TESTED" was false, misleading, and/or deceptive.

68.     Defendant knew, or reasonably should have known, or was reckless in not knowing, that representing its "Big Kid" Booster Seats as safe for children weighing as little as 30 pounds would lead a reasonable consumer to believe that Defendant's "Big Kid" Booster Seat would be safe to use for the consumer's 30 to 40-pound child.

69.     Defendant intended for its consumers to rely on Defendant's representations that its "Big Kid" Booster Seats were safe for children weighing as little as 30 pounds.

70.     Defendant's "Big Kid" Booster Seats are not safe for children weighing as little as 30 pounds; inf act, Defendant's "Big Kid" Booster Seats should not be used by children weighing less than 40 pounds.

71.     Defendant's representations regarding its "Big Kid" Booster Seats being safe for children weighing as little as 30 pounds was false, misleading, and/or deceptive.

72.     Plaintiff and members of the Class relied on Defendant's statements regarding side impact testing, and were deceived and/or misled by Defendant's statements that its "Big Kid" Booster Seats were "SIDE IMPACT TESTED" and thus safe for side impact scenarios.

73.     Plaintiff and members of the Class relied on Defendant's statements regarding the safety of Defendant's "Big Kid" Booster Seats for children weighing as little as 30 pounds and were deceived and/or misled by Defendant's statements that its "Big Kid" Booster Seats were safe for children weighing as little as 30 pounds.

74.     As a direct and proximate result of Defendant's misrepresentations in violation of Minn. Stat. § 325F.69, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF EXPRESS WARRANTY

75.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

18

76.     Defendant's user manual, labeling and advertisements convey a series of express and implied claims which they know are material to the reasonable consumer and which they intend for consumers to rely upon when choosing to purchase the "Big Kid" Booster Seats.

77.     Defendant's "Big Kid" Booster Seat user manual expressly warranted that it could be used by children weighing 30 to 110 lbs.

78.     Labels affixed to the "Big Kid" Booster Seat itself expressly warranted that it was "SIDE IMPACT TESTED," implying that it would keep children safe in the event of a side impact collision.

79.     Despite Defendant's warranty, Defendant's "Big Kid" Booster Seats are not sufficiently "SIDE IMPACT TESTED," and are not, in fact, safe for children in the event the vehicle the child is riding in is involved in a side impact collision, nor are they safe for children weighing thirty to forty pounds.

80.     Defendant's labeling and advertising was uniform and would be considered material to the average consumer.

81.     Plaintiff and members of the Class purchased Defendant's "Big Kid" Booster Seat believing the products were safe for their children weighing thirty pounds or more to use and superior to other brands by virtue of being "SIDE IMPACT TESTED."

82.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Defendant's "Big Kid" Booster Seats.

83.     The terms of that contract include the promises and affirmations of fact made by Defendant on its product packaging for its "Big Kid" Booster Seats, such as the promise that the "Big Kid" Booster Seats were safe in a side impact collision because they were "SIDE IMPACT TESTED" and were also for children weighing thirty to forty pounds to use.

84.    These promises and affirmations of fact constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

85.    Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by failing to provide a product with the promised benefits described above.

86.    As a result of Defendant's breach of its express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT

87.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

88.    This claim is asserted in the alternative on behalf of Plaintiff and the members of the Class, to the extent that the alleged contracts do not govern the entirety of the subject matter of the disputes with Defendant.

89.    Plaintiff and members of the proposed Class conferred a tangible economic benefit upon Evenflo by purchasing Evenflo's "Big Kid" Booster Seat.

90.    Plaintiff and members of the proposed Class would have either not purchased, or purchased and paid less for, Evenflo's "Big Kid" Booster Seat in absence of Evenflo's misleading advertising described above.

91.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

92.    Specifically, by its misconduct described herein, Defendant has accepted a benefit of monies paid by Plaintiff and Class members.

20

93.    As a result of Defendant's misconduct described herein, the retention of that benefit would be inequitable.

## COUNT V
## NEGLIGENT MISREPRESENTATION

94.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

95.    Defendant, as the designer and manufacturer of the "Big Kid" Booster Seat, owed a duty of care to Plaintiff and members of the Class to truthfully advertise its product, to provide correct safety specifications listing correct weights and heights for which children can safely use the product, and to provide a booster seat that provides adequate protection in the event of a vehicle accident.

96.    As alleged herein, Defendant made representations to Plaintiff and members of the Class in advertising Defendant's "Big Kid" Booster Seat as safe for side impact collisions because it was "SIDE IMPACT TESTED" and safe for children thirty to forty pounds to use.

97.    As alleged herein, the representations made by Defendant were false or misleading. While Defendant's "Big Kid" Booster Seats were technically "side impact tested," the side impact tests showed that children sitting in Defendant's "Big Kid" Booster Seat during a side-impact collision would suffer serious injury or death. Additionally, Defendant's "Big Kid" Booster Seat is not safe for children under forty pounds to use.

98.    Defendant knew or should have known that advertising its "Big Kid" Booster Seats as "SIDE IMPACT TESTED" conveyed a message to consumers that the booster seats were safe in side impacts.

99.    Defendant knew or should have known that its "Big Kid" Booster Seats performed poorly during side impact tests, and in fact the side impact tests performed showed that children

using Defendant's "Big Kid" Booster Seat would be seriously injured or killed in the event of a side impact.

100.   Defendant knew or should have known that advertising its "Big Kid" Booster Seats as safe for children weighing as little as 30 pounds, and specifically advertising the "Big Kid" Booster Seats as safe for children weighing between 30 and 110 pounds, conveyed a message to consumers that Defendant's "Big Kid" Booster Seats were safe for children who weighed 30 to 40 pounds.

101.   Defendant knew or should have known that its "Big Kid" Booster Seats were not safe for children weighing thirty to forty pounds to use.

102.   Defendant failed to use reasonable care and/or competence in communicating to potential purchasers of Defendant's "Big Kid" Booster Seats, including Plaintiff and members of the Class, that its "Big Kid" Booster Seats were not safe for children during side impact collisions, and were not safe for children weighing as little as thirty pounds.

103.   When Defendant made these misrepresentations, Defendant knew or should have known it had no reasonable grounds for believing them to be true as set forth herein.

104.   Defendant made these representations with the intention of inducing Plaintiff and members of the Class to act in reliance on these representations by believing Defendant's "Big Kid" Booster Seat to be safe in the event of a side impact collision, and to be safe for children weighing thirty to forty pounds to use.

105.   Plaintiff and members of the Class, at the time these representations were made by Defendant, and as reasonable consumers, were ignorant of the falsity of Defendant's representations regarding the safety of its "Big Kid" Booster Seats and believed them to be true.

106.    In reliance on these representations, Plaintiff and members of the Class, as reasonable consumers, were induced to and did purchase Defendant's "Big Kid" Booster Seat. Plaintiff's reliance on Defendant's representations was reasonable in light of the knowledge and experience of Plaintiff and members of the Class as reasonable consumers.

107.    As a proximate result of the fraudulent conduct of Defendant, Plaintiff and members of the Class were induced to spend money in the purchase of Defendant's "Big Kid" Booster Seat without knowing the true nature of the products.

108.    As a consequence of Defendant's negligent misrepresentations, Plaintiff and the members of the Class have been injured and are entitled to damages in an amount to be determined at trial.

## VII.    CLAIMS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendant Evenflo as follows:

1.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

2.    For an order that Defendant disgorges and restores to Plaintiff and Class members all monies including but not limited to profits wrongfully obtained by Defendant as a result of Defendant's untrue, unfair, deceptive or misleading representations, statements, or advertising or unlawful, unfair or fraudulent representations, statements, or advertising as alleged herein, pursuant to Minn. Stat. § 325D.44 and/or Minn. Stat. §325F.69;

3.    Declaring that Evenflo breached its express warranty with Plaintiff and Class members;

4.    Declaring that Evenflo was unjustly enriched at the expense of Plaintiff and Class members;

5.      Declaring that Evenflo is liable for negligent misrepresentation with respect to its "Big Kid" Booster Seats;

6.      Ordering Evenflo to pay actual and statutory damages, as allowable by law;

7.      Ordering Evenflo to provide restitution to Plaintiff and Class members as allowable by law;

8.      Upon filing a motion and approval by the Court, ordering Evenflo to pay punitive damages, as allowable by law;

9.      Ordering Evenflo to pay pre- and post-judgment interest on any amounts awarded;

10.     Ordering Evenflo to pay attorneys' fees and related costs; and

11.     Ordering such relief as may be just and proper.

## VIII.   JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED,** this 20th day of February 2020.

*/s/ Timothy J. Becker*
Timothy J. Becker (MN Bar No. 0256663)
Jennell K. Shannon (MN Bar No. 0398672)
**JOHNSON BECKER PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1804 (phone)
(612) 436-4801 (fax)
tbecker@johnsonbecker.com
jshannon@johnsonbecker.com

*Attorneys for Plaintiff and the Proposed Class*